UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re Application of<br><br>FOURWORLD EVENT OPPORTUNITIES, LP and GENESIS EMERGING MARKETS INVESTMENT COMPANY<br><br>Petitioners, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Case No. 22- |

**MEMORANDUM OF LAW IN SUPPORT OF THE APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782**

Duane L. Loft*
Brianna Hills Simopoulos*
PALLAS PARTNERS (US) LLP
75 Rockefeller Plaza
New York, NY 10001
Telephone: (212) 970-2300
Duane.Loft@pallasllp.com
Brianna.Simopoulos@pallasllp.com

Ira A. Schochet*
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0864
ischochet@labaton.com

Christine Mackintosh
GRANT & EISENHOFER
123 S. Justison Street
Wilmington, DE 19801
Telephone: (302) 622-7081
cmackintosh@gelaw.com

*Pro hac vice* application forthcoming

*Attorneys for Petitioners*

## TABLE OF CONTENTS

EX PARTE APPLICATION ..................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 4

    A.    Parties to the Foreign Proceeding ............................................................... 4

    B.    The Merger .................................................................................................. 5

    C.    Petitioners' Cayman Islands Appraisal Proceeding .................................... 7

    D.    Discovery in the Cayman Islands Appraisal Proceeding ........................... 8

    E.    Mercury and the Discovery Sought ........................................................... 9

ARGUMENT ........................................................................................................................... 10

I.    The Application Satisfies the Three Statutory Requirements of 28 U.S.C. 1782 ............ 10

    A.    Mercury "Resides" or Is "Found in" this District. .................................. 10

    B.    The Discovery Sought Is "For Use" In a Foreign Proceeding. ............... 11

    C.    Petitioners Are "Interested Persons." ...................................................... 11

II.    The *Intel* Discretionary Factors Weigh in Favor of Granting Discovery. ....................... 11

    A.    Mercury Is a Non-Participant in the Appraisal Proceeding. ................... 12

    B.    The Cayman Islands Court Will Be Receptive to the Evidence Sought. ............... 12

    C.    Petitioners Are Not Circumventing Foreign Proof-Gathering Restrictions .......... 13

    D.    The Subpoena Is Not Unduly Burdensome. .......................................... 14

III.    Expedited Compliance with the Subpoenas Is Warranted. .............................................. 15

CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,
   785 F.Supp. 2d 434 (S.D.N.Y. 2011) ................................................................. 11-12, 13

*Euromepa, S.A. v. R. Esmerian, Inc.*,
   51 F.3d 1095 (2d Cir. 1995) ...................................................................................... 15

*Gushlak v. Gushlak*,
   486 F. App'x 215 (2d Cir. 2012) ................................................................................ 13

*In re Accent Delight Int'l Ltd.*,
   869 F.3d 121 (2d Cir. 2017)………………………………..……………………….…...11

*In re Appl. of OOO Promnefstroy for an Order to Conduct Discovery for Use in a Foreign Proceeding*,
   No. M 10-99 (RJS), 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) .......................... 13

*In re Application of Athos Asia Event Driven Master Fund*,
   No. 1:21-MC-00208-GBF, ECF 8 (S.D.N.Y. Mar. 3, 2021) ...................................... 13

*In re Application of Athos Asia Event Driver Master Fund*,
   No. 4:21-MC-00153-AGF, 2021 WL 1611673 (E.D. Mo. Apr. 26, 2021) .............. 13

*In re Application of Gilead Pharmasset, LLC*,
   2015 WL 1903957 (D. Del. Apr. 14, 2015)………………………………………………11

*In re Bayer AG*,
   146 F.3d 188 (3d Cir. 1998) ................................................................................. 2, 14

*In re del Valle Ruiz*,
   342 F. Supp. 3d 448 (S.D.N.Y. 2018), *aff'd* 939 F.3d 520 (2d Cir. 2019) .............. 11

*In Re EWE Gasspeicher GmbH*,
   No. 19-mc-109-RGA, 2020 WL 1272612 (D. Del. Mar. 17, 2020 ......................... 10

*In Re FourWorld Event Opportunities, LP*,
   No. 21-mc-00283-RGA, ECF No. 1 (D. Del. July 29, 2021) ..................................... 4

*In Re FourWorld Event Opportunities, LP*,
   No. 21-mc-00283-RGA, ECF No. 5 (D. Del. July 29, 2021) ..................................... 3

*In Re FourWorld Event Opportunities, LP*,
   No. 21-mc-00283-RGA, ECF No. 6 (D. Del. July 29, 2021) ..................................... 2

*In re O'Keeffe*,
  2015 WL 540238 (D.N.J. Feb. 10, 2015), *aff'd* 2015 WL 5039723 (D.N.J. Aug. 26, 2015),
  *aff'd* 646 F. Appx. 263 (3d Cir. 2016) ....................................................................................... 14

*In re Penner*,
  No. 17-cv-12136-IT, 2017 WL 5632658 (D. Mass. Nov. 22, 2017) ........................................ 13

*In re Platinum Partners Value Arbitrage Fund L.P.*,
  583 B.R. 803 (Bankr. S.D.N.Y. 2018) ..................................................................................... 13

*Mees v. Buiter*,
  793 F.3d 291 (2d Cir. 2015) ............................................................................................. 10, 12

**STATUTES**

28 U.S.C. § 1782 ................................................................................................................ 1, 8, 10

## EX PARTE APPLICATION

Petitioners respectfully submit this Application pursuant to 28 U.S.C. § 1782 to take limited discovery from entities found in this District for use in connection with an appraisal proceeding filed in the Grand Court of the Cayman Islands (the "**Cayman Court**") on November 10, 2020 (the "**Appraisal Proceeding**"). In the Appraisal Proceeding, Petitioners (along with other dissenting shareholders) seek a determination of the fair value of their former shareholdings in 58.com ("**58.com**" or the "**Company**"), a Cayman Islands company that was delisted from the New York Stock Exchange, and taken private on September 17, 2020. Petitioners' shares were forcibly canceled through a $8.7 billion merger orchestrated by the Company's CEO and several private-equity funds (the "**Merger**").

In the Appraisal Proceeding, Petitioners and other dissenting shareholders will assert that the Merger was coercive and fundamentally unfair to minority shareholders, with respect to both the Merger price, which significantly undervalued 58.com's shares, and the process to approve the Merger. Through this Application, Petitioners seek narrowly tailored discovery (the "**Requested Discovery**") from Mercury Capital Advisors,[1] which solicited co-investment in connection with the Merger and likely itself invested in the Company as part of the Merger. Petitioners seek Mercury's communications with the Buyer Group, the Company, and other potential co-investors in the Company. These communications are likely to include analysis of the valuation of the

---

[1] Petitioners request leave to serve the proposed Subpoena on the following entities associated with Mercury Capital Advisors: Mercury Capital Advisors, LLC; Mercury Capital Advisors Group GP, LLC; Mercury Capital Advisors Group, LP; Mercury Capital GP, LP; Mercury Capital Group, LLC; Mercury Capital Holdings, LLC; Mercury Capital Hermes Holdings, Inc.; Mercury Capital, LP; Mercury Capital Investment Corp.; Mercury Capital Investments LLC; Mercury Capital Advisers, Ltd.; Mercury Capital Advisors Group GP, LLC; Mercury Capital Advisors Group, LP; Mercury Capital Advisors Asia, LLC; Mercury Capital Manager, LP; and IVC Hermes Holdings, Inc. (collectively, "**Mercury**" or the "**Mercury Capital Entities**").

Company, including information from the Buyer Group on the Company's value. All of this discovery is relevant to the Appraisal Proceeding, in which the Cayman Court will examine both the fairness of the Merger consideration and also the process undertaken by the Company to approve the Merger.

Ordering discovery here would also be consistent with this Court's prior order granting both document and deposition discovery in connection with this same Appraisal Proceeding from Warburg Pincus Asia LLC, one of the members of the Buyer Group that took the Company private. *See In Re FourWorld Event Opportunities, LP*, No. 21-mc-00283-RGA, ECF No. 6 (D. Del. July 29, 2021) (granting Petitioners' Section 1782 application *ex parte*).

Section 1782 authorizes this Court to order discovery from any person that resides or is found in this district to assist with proceedings before foreign tribunals. As the Third Circuit has explained, "Consistent with the statute's modest prima facie elements and Congress' goal of providing equitable and efficacious discovery procedures, district courts should treat relevant discovery materials sought pursuant to § 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify the denial of the application." *In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998). Petitioners' Application meets all of the statutory requirements of Section 1782: (i) Mercury "resides or is found" in this District; (ii) the Requested Discovery is "for use" in a foreign proceeding, namely the Appraisal Proceeding; and (iii) Petitioners, each of which is a party to the Appraisal Proceeding, easily meet the standard for an "interested person" under the statute. In addition, each of the Supreme Court's factors that guide this Court's exercise of discretion under Section 1782 weighs decisively in favor of granting Petitioners' Application. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) ("*Intel*").

*First*, Petitioners seek discovery from a "nonparticipant" in the foreign action. *Id.* Mercury is not a party in the Appraisal Proceeding or otherwise subject to the jurisdiction of the Cayman Court. This is a sufficient basis for the Court to hold that the first factor is satisfied. In addition, to Petitioners' knowledge, Mercury has not provided any documents that have been disclosed thus far in the Appraisal Proceeding.

*Second*, there is no indication, let alone the required "authoritative proof," suggesting that the Cayman Court might be unreceptive to Section 1782 assistance. *Id.* To the contrary, as established in the expert declaration of Justice Ingrid Mangatal (Ret'd) submitted in the Related Action, (1) Petitioners *prima facie* have the right to gather evidence pursuant to Section 1782 to the Cayman Court in support of their claims, and (2) admissibility of such evidence will be judged by the same know threshold of relevance and narrow exclusionary rules applicable to all other evidence presented to the Court. No court in the Cayman Islands considering an appraisal application has ever excluded evidence gathered by Section 1782.[2]

Indeed, the Directions Order from the Grand Court in the Appraisal Proceeding specifically contemplates that the parties will use Section 1782 to obtain evidence for use in that proceeding, the Petitioners have done so in related Section 1782 proceedings, and the Company has intervened in those actions, in each case, expressly taking no position as to the propriety of Section 1782 discovery. This is consistent with recent decisions from Cayman Islands appraisal cases, decisions of other U.S. courts finding that Cayman courts are receptive to Section 1782 evidence, and decisions of courts across the country in related Section 1782 proceedings, which have found that this Cayman court is receptive to Section 1782 discovery for this Appraisal Proceeding.

---

[2] Justice Mangatal's declaration was submitted as part of the related action, *In Re FourWorld Event Opportunities, LP*, No. 21-mc-00283-RGA, ECF No. 5 (D. Del. July 23, 2021) ("**Mangatal Decl.**").

*Third*, the Application is not concealing any improper attempt to circumvent any foreign discovery restrictions on proof gathering. *Intel*, 542 U.S. at 264. The requested discovery does not implicate any privilege or special protection that would make it improper under Cayman Islands law.

*Fourth*, the proposed discovery is not unduly burdensome. *Id.* To the contrary, the subpoena is narrowly tailored to seek information directly relevant to the critical issues in the Appraisal Proceeding—namely (a) documents and communications exchanged between Mercury and members of the Buyer Group and the Company as part of its co-investment solicitation activities, and (b) documents and communications exchanged between Mercury and the Company in connection with its own investment in the Company.

*Finally*, as it did in its decision on a related Section 1782 application, the Court should exercise its discretion to order production of any responsive discovery that Mercury has in its possession, custody, or control, regardless of the physical location of that evidence. Section 1782 is extraterritorial in reach, and courts commonly order discovery of evidence located abroad, particularly where, as here, the discovery is from a third-party not subject to the jurisdiction of the foreign court.

## FACTUAL BACKGROUND

Petitioners assume the Court's familiarity with the factual background of the Merger given the Court's decision in the related action but have included below a short summary of the relevant facts. *See In Re FourWorld Event Opportunities, LP*, No. 21-mc-00283-RGA, ECF No. 1 (D. Del. July 23, 2021) (the "**Related Action**").

### A.   Parties to the Foreign Proceeding

Petitioners are funds that invested in 58.com and owned 58.com shares immediately before the effective date of the Merger that is the subject of Appraisal Proceeding. *See* Declaration of

4

Marc Kish in Support of Petitioners' Application ("**Kish Decl.**") ¶ 13. Petitioners are respondents in the Appraisal Proceeding. *Id.* ¶ 13. Before the Merger, 58.com—China's largest online classifieds business—was a publicly traded corporation incorporated in the Cayman Islands. *Id.* ¶ 14. The Company's American Depository Shares ("**ADS**") were traded on the New York Stock Exchange. *Id.* ¶ 15. Jinbo Yao, the Company's CEO and founder, historically maintained significant control over the voting shares of 58.com. *Id.* ¶ 16.

### B. The Merger

On June 15, 2020—three months after the world was plunged into the COVID-19 global pandemic, which had a temporary negative impact on the demand for the Company's online classifieds services and thus its share price—the Company announced that it had entered into a merger agreement through which 58.com would be acquired by Mr. Yao along with a consortium of private equity funds (the "**Buyer Group**"). *Id.* ¶ 19. In addition to Mr. Yao, the Buyer Group also included funds wholly owned and controlled by Warburg Pincus and General Atlantic—two New York-based private equity firms—along with Ocean Link Partners L.P., a China-based private equity firm. As noted, through Mr. Yao, the Buyer Group collectively controlled over 44% of the Company's voting shares as of August 7, 2020. *Id.* ¶ 20.

The announcement stated that on the effective date of the Merger, 58.com's publicly traded ADS—equity shares of a foreign company held by a U.S. depositary bank available for purchase by U.S. investors—would be canceled in exchange for the right to receive $56 per ADS. *Id.* ¶ 21. Under the terms of the Merger, 58.com was to become a wholly owned subsidiary of a company called Quantum Bloom Group Ltd, which would be beneficially owned by the Buyer Group, including Mr. Yao, Warburg Pincus, General Atlantic, Ocean Link, and others.

The lead-up to the Merger announcement was characterized by a flawed process designed to engineer the management buyout desired by Mr. Yao and his private equity partners. On March

5

24, 2020, the Company engaged Kaihui Limited ("**Kaihui Limited**") as its consultant to explore strategic transactions. On April 2, 2020, Kaihui Limited contacted Ocean Link; incredibly, that very evening, Ocean Link submitted a proposal to acquire all the outstanding shares of the Company at $55 per share, an offer clearly designed to opportunistically capitalize on a temporary depression on 58.com's trading prices associated with the coronavirus outbreak, which immediately before, on January 16, 2020, were in excess of $69 per share. The Company then decided to create a Special Committee of independent board members, which would be tasked with considering the Merger. However, there were no independent board members at the time. The Company consequently appointed two new board members: Li (Lily) Dong and Robert Frank Dodds, Jr. who, together, comprised the entire Special Committee.

Other features of the Merger process give rise to significant concern. The Special Committee treated Kaihui Limited as its advisor and agent throughout its negotiations with the Buyer Group, even though Kaihui Limited was hired by the same members of the Company's management that would later propose the transaction as part of the Buyer Group. No effort was undertaken to shop the Company to competing bidders to ensure that 58.com shareholders received maximum value for their shares. Ultimately, the Special Committee and the Buyer Group agreed to a purchase price of $56 per share, but only after removing a critical protection that would have required approval by a majority of the minority shareholders (the **"MoM Condition"**) to protect minority shareholder rights, making the approval of the transaction almost certain regardless of support from the minority shareholders. As previously noted, the Buyer Group that took 58.com private collectively held 44% of the Company's voting shares, and other principal shareholders (who collectively held 28% of the Company's voting power) were incentivized to vote for the Merger because they were not required to exchange their shares for the inadequate Merger

consideration (i.e., their shares were rolled over into the merged company). Thus, the controlling shareholders were able to impose the Merger on minority shareholders without their consent. The negotiation process took only 74 days, and the price negotiation only lasted 10 days, a staggeringly rushed timeline designed to undervalue the Company and squeeze out minority shareholders.

Although minority shareholders expressed concern about the deal, on September 7, 2020, the Company held an extraordinary general meeting of shareholders (the "**EGM**"), at which time 58.com shareholders voted on whether to approve the Merger. Kish Decl. ¶ 28. Only 15% of all shareholders that were unaffiliated with either the Buyer Group or the Rollover Shareholders voted in favor of the transaction. Despite widespread opposition from the unaffiliated shareholders, the transaction was forced through. Accordingly, Petitioners' shares and the shares of all remaining stockholders—other than Members of the Buyer Group—were canceled in exchange for the Merger consideration effective September 17, 2020, at a price Petitioners allege is substantially below their fair value. *Id.* ¶ 29.

As alleged in the Appraisal Proceeding and explained in detail in Petitioner's Related Action, the Merger price significantly undervalued 58.com shares, was the result of a significantly flawed process, and was coercive and unfair to 58.com's minority shareholders.

    **C.**    **Petitioners' Cayman Islands Appraisal Proceeding**

Under Section 238 of the Companies Act, the Cayman Court in the Appraisal Proceeding has a statutory obligation to determine the fair value of the dissenting shareholders' shares. As described in the declaration of Justice Mangatal, the parties to the Appraisal Proceeding—including the Petitioners and 58.com—will submit evidence, expert testimony, and legal briefs to the Cayman Court, which will weigh the evidence and determine the fair value of Petitioners' shares. *See* Mangatal Decl. ¶ 18. In assessing fair value in a Cayman Islands Appraisal Proceeding, the Cayman Court will examine the fairness (or lack thereof) of the process that led

58.com's board to approve the Merger. In doing so, the Cayman Court will consider the fairness of the Merger to 58.com's minority stockholders and will likely focus on, among other things, the process by which the 58.com board and/or Special Committee negotiated and approved the Merger price, and the valuations relied upon by the 58.com Special Committee and the Buyer Group.

### D. Discovery in the Cayman Islands Appraisal Proceeding

There is no automatic right to discovery in Section 238 proceedings similar to pre-trial discovery in the United States. Instead, only upon Court order is a party to the proceeding required to provide discovery of "documents which are in their possession, custody or power relating to any matter in question between them in the action." Mangatal Decl. ¶ 32 (citing Grand Court Rules ("GCR") Order 24 rule 3). Discovery of non-parties, particularly those like Mercury that are outside the Court's jurisdiction, is very limited, subject to cumbersome procedures, and rarely used. *Id*. ¶ 43. The discovery process in the Appraisal Proceeding is ongoing. Supplemental Declaration of Marc Kish ("**Supp. Kish Decl.**") ¶ 12.

Nevertheless, Cayman Courts remain receptive to evidence obtained through other judicial measures such as 28 U.S.C. § 1782. Indeed, as explained by Justice Mangatal, "Cayman courts have had the opportunity to consider specifically the use of 28 U.S.C. §1782 in connection with Cayman Islands proceedings and have held that it is permissible for a litigant in a Cayman Islands proceeding to exercise any rights it may have under 28 U.S.C. § 1782 to obtain relevant evidence for use in proceedings in the Cayman Islands." *Id.* ¶ 55. All relevant evidence obtained through this Application, other than that for which privilege can be asserted, will be admissible in the Cayman Court. *Id*. ¶ 53. Furthermore, Cayman Islands courts expect the parties to obtain the evidence they believe is necessary to prosecute their case. *Id*. ¶ 66. There is no requirement to obtain permission from a Cayman Islands court before seeking relevant evidence abroad in the U.S. under 28 U.S.C. § 1782. *Id*. And indeed, the court order that governs discovery in the

8

Appraisal Proceeding (the "**Directions Order**") contains a provision that expressly contemplates the use of Section 1782. *See* Loft Decl., Ex. 8 ¶ 50.

E. **Mercury and the Discovery Sought**

Mercury describes itself on its website as "one of the world's elite institutional capital raising and investment advisory firms." Mercury Capital solicited co-investment in connection with the Merger and likely itself invested in the Company as part of the take-private transaction. Petitioners seek limited discovery from Mercury, targeted at issues central to the Appraisal Proceeding, that is, fair value.

Based on public information, it appears that Mercury worked for Ocean Link Partners, one of the members of the Buyer Group, to solicit co-investment. Mercury may have itself also invested in the Company through Ocean Link. Mercury touts its involvement in the Merger on the "track record" section of its website, shown below:[3]



---

[3] Mercury Capital, *58.com Take Private*, available at https://mercurycapitaladvisors.com/track-record/58-com-take-private/ (last accessed Nov. 8, 2022).

9

As a solicitor of co-investment for the Merger and an eventual investor itself, Mercury was likely privy to internal Buyer Group and Company conversations about the Merger terms, the Merger price, and the attendant negotiations.

## ARGUMENT

Section 1782 of Title 28 of the United States Code permits U.S. district courts to grant discovery for use in a pending foreign proceeding or a foreign proceeding. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 243 (2004). A Section 1782 application must satisfy three "modest prima facie elements": (1) the discovery is sought from someone who resides or is found within the District; (2) the discovery is for use before a foreign tribunal; and (3) the applicant is an "interested person." *In re EWE Gasspeicher GmbH*, 2020 WL 1272612, at *1 (D. Del. Mar. 17, 2020). If these statutory requirements are met, the court then considers four discretionary "*Intel*" factors. *Intel*, 542 U.S. at 264–65. In considering these factors, the court is required to keep in mind "the twin aims of Section 1782: providing efficient assistance to participants in international litigation, and encouraging foreign countries by example to provide similar assistance to our courts." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) (quotations and citations omitted).

**I.     The Application Satisfies the Three Statutory Requirements of 28 U.S.C. 1782.**

Petitioners satisfy the three threshold statutory requirements of Section 1782.

**A.     Mercury "Resides" or Is "Found in" this District.**

Section 1782's statutory element that an entity "reside or be found" in a district is satisfied when an entity is incorporated in the district. *In re Application of Gilead Pharmasset LLC*, No. 14–mc–243 (GMS), 2015 WL 1903957, at *2 (D. Del. April 14, 2015) ("found in" element satisfied when Respondent "is incorporated under the laws of Delaware, and is therefore within the jurisdictional reach of this court"). That evidence may be located abroad does not change the analysis. *See, e.g.*, *In re del Valle Ruiz*, 342 F. Supp. 3d 448, 459, *aff'd* 939 F.3d 520 (2d Cir. 2019)

10

(exercising discretion to permit discovery of evidence located abroad). All of the Mercury Capital Entities are incorporated in Delaware and are thus "found" in this District for purposes of Section 1782. *See* Loft Decl., Ex. 5.

### B. The Discovery Sought Is "For Use" In a Foreign Proceeding.

To establish that the information sought is "for use" in a foreign proceeding, Petitioners must merely show that they have "the procedural right to submit the requested documents to" the foreign tribunal. *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017). Petitioners have already relied upon evidence from related Section 1782 proceedings in the Appraisal Proceeding, and the discovery process in the Appraisal Proceeding is ongoing. The Requested Discovery is therefore plainly "for use" in the Appraisal Proceeding, and Petitioners have thus satisfied the second statutory requirement.

### C. Petitioners Are "Interested Persons."

"Litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256; *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F.Supp. 2d 434, 256 (S.D.N.Y. 2011) ("No doubt litigants are included among . . . the interested persons who may invoke § 1782.") (quoting *Intel*, 542 U.S. at 256). Because Petitioners are claimants in the Appraisal Proceeding, Kish Decl. ¶ 34, they are "interested persons." All of the statutory elements are thus satisfied here.

## II. The *Intel* Discretionary Factors Weigh in Favor of Granting Discovery.

Once the statutory threshold requirements of Section 1782 are met, a district court considers, in its discretion, whether to order the requested discovery. To do this, the district court looks to the four "*Intel* factors." *See Intel*, 542 U.S. at 264; *see also Mees*, 793 F.3d at 298. Each of the *Intel* factors is discussed below and weighs in favor of granting the Application.

11

### A.  Mercury Is a Non-Participant in the Appraisal Proceeding.

The first *Intel* factor asks whether the party from whom discovery is sought is a party to the foreign proceeding. The reason for this inquiry is because "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. Mercury is not a party in the Appraisal Proceeding, and therefore will not be subject to party discovery in the Appraisal Proceeding. Mangatal Decl. ¶ 42. Further, because Mercury does not reside in the Cayman Islands, the Cayman Court will not have jurisdiction to compel discovery from it. *Id*. Petitioners, therefore, will not be able to take discovery of Mercury through the Appraisal Proceeding, even though evidence may be crucial to the issues in that proceeding. Although it would not have been sufficient to defeat Petitioners' showing on this factor, it is also worth noting that Mercury did not on its own provide any documents to the Company for it to produce in the Appraisal Proceeding. Accordingly, this first *Intel* factor weighs in favor of granting the Application.

### B.  The Cayman Islands Court Will Be Receptive to the Evidence Sought.

The second *Intel* factor requires courts to consider whether the "nature, attitude, and procedures" of the foreign tribunal indicate that it is receptive to Section 1782 assistance. Absent authoritative proof that the foreign tribunal would reject evidence obtained through Section 1782, courts are inclined to grant the application for discovery.[4] As numerous courts across the country, including this Court, have held, Cayman Islands courts, and the Cayman court in the Appraisal

---

[4] *See In re Appl. of OOO Promnefstroy for an Order to Conduct Discovery for Use in a Foreign Proceeding*, No. M 10-99 (RJS), 2009 WL 3335608, at *7 (S.D.N.Y. Oct. 15, 2009).

Proceeding in particular, are receptive to discovery under Section 1782.[5] The receptivity of the Cayman Court to evidence obtained through this Application will be no different.

### C.  Petitioners Are Not Circumventing Foreign Proof-Gathering Restrictions.

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265.  Because "relevant evidence is presumptively discovery under § 1782," the third *Intel* factor is satisfied unless the foreign court actively prohibits the petitioner from gathering the information sought. *Bayer*, 146 F.3d at 196.  In addition, there is no "quasi-exhaustion requirement," *i.e.*, a requirement that petitioner first seek the discovery in a foreign court. *Bayer*, 146 F.3d at 196 ("A 'quasi-exhaustion requirement' of the kind advocated by [the respondent] on appeal has been rejected by those courts that have addressed it."); *In re O'Keeffe*, No. 14-cv-5835 (WJM), 2015 WL 540238, at *4 (D.N.J. Feb. 10, 2015), *aff'd*, 2015 WL 5039723 (D.N.J. Aug. 26, 2015), *aff'd*, 646 Fed. Appx. 263 (3d Cir. 2016) ("We have never held that an applicant must seek discovery relief in the foreign forum first.").  The discovery sought does not

---

[5] *See also In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 816 (Bankr. S.D.N.Y. 2018) ("Liquidators present unrebutted evidence that, far from being hostile to Cayman litigants seeking evidence under U.S. law, Cayman courts are in fact receptive to evidence obtained through U.S. discovery procedures, even if such evidence may not be discoverable under Cayman law."); *Gushlak v. Gushlak*, 486 F. App'x 215, 218 (2d Cir. 2012) (affirming use of Section 1782 applications in connection with Cayman divorce proceedings); *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 439 (S.D.N.Y. 2011) (granting Section 1782 applications seeking documents for use in Cayman proceedings); *In re Penner*, 2017 WL 5632658, at *3 (D. Mass. Nov. 22, 2017) (finding that the Cayman Court "is open to receiving § 1782 discovery").  Indeed, two district courts recently granted 1782 petitioners' applications for both document discovery and a deposition for use in an appraisal proceeding in the Cayman Islands. *See In re Application of Athos Asia Event Driver Master Fund*, No. 4:21-MC-00153-AGF, 2021 WL 1611673, at *1 (E.D. Mo. Apr. 26, 2021) ("There is no indication in the record here that a discovery order would be unwelcome by the Cayman Islands court."); *In re Application of Athos Asia Event Driven Master Fund*, No. 1:21-MC-00208-GBF, ECF 8 (S.D.N.Y. Mar. 3, 2021) (granting 1782 petition for discovery for use in Cayman appraisal proceeding).

13

attempt to circumvent any proof-gathering restrictions in the Cayman Islands. To the contrary, as Justice Mangatal explains, "Cayman courts expect the parties to obtain the evidence they believe is necessary to prosecute their case" and "[t]hus there is no requirement to obtain permission from a Cayman court before seeking relevant evidence abroad." Mangatal Decl. ¶ 66.

### D. The Subpoena Is Not Unduly Burdensome.

The final *Intel* factor looks to whether the discovery requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure. *See In re Bayer AG*, 146 F.3d at 195 ("The reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute.").

*First*, Petitioners only seek evidence that Mercury may have sent or received that is relevant to the fair value of the Company, the issue at the heart of the Appraisal Proceeding. Petitioners note that the document categories in the Proposed Subpoena are, aside from necessary differences given Mercury's role in the Merger, substantially similar to the narrowed categories of documents ordered by the Court in the Related Action.

*Second*, the discovery requests are temporally limited to the period leading up to the Merger and immediately following the Merger. As explained in the accompany declaration of Marc Kish, Cayman counsel to Petitioners, even evidence that post-dates the Valuation Date (that is, the date on which fair value is assessed by the Grand Court) may be relevant to fair value. The Directions Order entered by the Grand Court in the Appraisal Proceeding specifically permits the parties' experts to make Information Requests for such discovery. Supp. Kish Decl., Ex. 2 at ¶ 18 ("For the avoidance of doubt, an Information Request may include requests for information, documents, communications or materials created after the Valuation Date."). If Mercury continued to solicit

14

co-investment after the Valuation Date, those documents and communications would almost certainly include the views of Mercury and the Buyer Group on the value of the Company. Those documents are relevant notwithstanding that they were created after the Valuation Date.

*Third*, Petitioners are willing to meet and confer with Mercury to address any scope of burden concerns. If the Court has remaining concerns about undue burden, granting the Application will not preclude Respondent from bringing a motion to quash or modify the discovery sought. If the Court finds merit to such objections, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995).

### III.    Expedited Compliance with the Subpoenas Is Warranted.

In the event the Court grants Petitioners' Application, Petitioners respectfully request that the Court direct Mercury to produce responsive documents within 30 days of service. Expedition of this Application and Mercury's time to comply with the Subpoenas will permit sufficient time for (a) this Court's resolution of Petitioners' Section 1782 Application and any objections to the Subpoena; (b) Mercury's collection, review, and production of responsive documents; (c) Petitioners' counsel's review of documents produced by Mercury; and (d) Petitioners' timely submission of relevant documents to the Grand Court. This expedition is important given that, under the Directions Order that currently governs the Appraisal Proceeding, the deadline for Petitioners to submit factual evidence to the Cayman court is December 23, 2022. *Id.* ¶ 41.

### CONCLUSION

Petitioners respectfully request that the Court grant their Application.

Dated: November 8, 2022

By:   /s/ Christine Mackintosh

GRANT & EISENHOFER P.A.
Christine Mackintosh
123 S. Justison Street
Wilmington, DE 19801
Telephone: (302) 622-7081
cmackintosh@gelaw.com

PALLAS PARTNERS (US) LLP
Duane L. Loft*
Brianna Hills Simopoulos*
75 Rockefeller Plaza
New York, NY 10001
Telephone: (212) 970-2300
Duane.Loft@pallasllp.com
Brianna.Simopoulos@pallasllp.com

LABATON SUCHAROW LLP
Ira A. Schochet*
140 Broadway
New York, NY 10005
Telephone: (212) 907-0864
ischochet@labaton.com

*Pro hac vice applications forthcoming

Attorneys for Petitioners

16